UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 22 CR 18 |
|---|---|
| v. | Judge Manish S. Shah |
| SARAH DIAMOND | |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby submits its position paper as to sentencing factors, and asks this Court to impose a sentence within the Guidelines imprisonment range, along with a period of three years' supervised release and restitution to the victims.

**I.  BACKGROUND**

The defendant, a registered professional nurse, repeatedly stole pain medication from patients at nursing and memory care facilities, replacing them with other substances. Discarding the principle of "do no harm," defendant was indifferent to her patients' suffering. She targeted the most vulnerable among us, including hospice patients living out their final days. She was terminated from at least four, and as many as six, separate facilities based on her documented or suspected theft of patient medications.

Defendant landed her position at the last facility in the summer of 2021. There, she was not just a nurse; she was the Assistant Director of Nursing. Exploiting the trust placed in her in those roles, she stole pain medication from at least five different

hospice patients, covered it up by diluting the medication intended for them, and allowed diluted medication to be administered to her patients. Each of the patients had been prescribed liquid morphine to manage their pain. Bottles for two of the patients—Patients A and B—were diluted to just 26% and 53%, respectively, of the declared amount of morphine in the bottles. Bottles for the other three patients were diluted in amounts ranging from 19% to 68% of the declared amount. During one of defendant's shifts, family members of Patient A observed that she was in obvious pain and initially believed the morphine was no longer effective. The defendant did not alleviate Patient A's pain. It took a call to the hospice company, who sent a hospice nurse to ensure that she received adequate morphine, to comfort her. She died three days later.

Defendant's conduct stopped only after she was confronted by an administrator at the facility about bottles of morphine that appeared diluted, among other red flags that other nurses had noticed following defendant's shifts. Defendant eventually admitted that she had removed liquid morphine for personal use and replaced it with saline, and she was terminated. Law enforcement agents later confronted her with evidence of additional incidents of tampering with patient medications at the facility, and defendant eventually confessed to having administered diluted morphine to her patients there approximately 20 times. Defendant also acknowledged her history of

stealing pain medications from patients at other medical facilities, and administering diluted morphine to those patients.[1]

As a result of her conduct, defendant's nursing license was suspended, and defendant was charged by indictment with two counts of tampering with a consumer product, in violation of Title 18, United States Code, Section 1365(a)(4). Pursuant to a plea agreement, on April 11, 2023, she pleaded guilty to Count One of the indictment. Doc. 29.

**II.    GUIDELINES CALCULATIONS**

If defendant continues to accept responsibility for her offense conduct and relevant conduct, the government agrees with the offense level and criminal history calculations in the PSR submitted by the United States Probation Office. PSR ¶¶ 17-27. Those calculations, which were made pursuant to the 2021 Guidelines Manual, are the same under the current 2023 Guidelines Manual. The calculations correctly include adjustments for her targeting of vulnerable victims, pursuant to U.S.S.G. § 3A1.1(b)(1), and her abuse of a position of public and private trust, pursuant to U.S.S.G. § 3B1.3. Although defendant has zero criminal points, she is ineligible for the zero-point offender adjustment under U.S.S.G. § 4C1.1 because she receives an adjustment under § 3A1.1 (Vulnerable Victim), *id.* § 4C1.1(a)(9).

With a total offense level of 26 and a criminal history category of I, the resulting advisory Guidelines range is 63 to 78 months' imprisonment. PSR ¶ 82.

---

[1] Further details of the defendant's conduct are set forth in the Government's Version of the Offense, which is appended to the PSR.

## III. SENTENCING FACTORS AND GOVERNMENT'S RECOMMENDATION

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing, *Gall v. United States*, 552 U.S. 38, 49–50 (2007), and must be considered along with all of the factors set forth in Title 18, United States Code, Section 3553(a). Considering these factors, the government recommends a sentence within the Guidelines range; a three-year term of supervised release; and an order of restitution. The government's sentencing recommendation is driven primarily by the cruelty and callousness defendant displayed toward the vulnerable patients in her care; her abuse of a position of trust and leadership at the nursing facility; and the very real pain she caused to at least one patient in their final days of life. A Guidelines sentence is sufficient, but not greater than necessary, to reflect the nature and circumstances of her offense and her history and characteristics, while promoting respect for the law, providing just punishment, and affording adequate deterrence.

### A. The Nature and Circumstances of the Offense

Defendant's conduct was cruel and exploitative. The patients whose pain medication she tampered, including Patients A, B, C, D, and E, were typically hospice patients at the end of their lives, some of whom were non-verbal or suffered from significant memory issues. As the Assistant Director of Nursing, defendant was entrusted to administer medications to patients, including controlled substances, with limited supervision. As a nurse, she also was entrusted to care for the patients and ensure that their pain was managed. The defendant abused both her patients' trust and the professional trust afforded to her by virtue of her position.

4

Defendant's conduct deprived patients in pain of the medication they needed to manage that pain, often at the end of their lives. In addition to being cruel to the patient, in at least one instance the patient's family members observed the patient suffering during what would end up being some of their final moments before dying. These family members had chosen hospice to ensure the comfort of their loved one in their final days, and defendant stole that comfort away.

The breadth of defendant's conduct—in time and place—is also particularly aggravating. In addition to the facility in Crystal Lake, defendant had worked at five other facilities between 2019 and 2021. She has admitted to diluting medication for patients at two of these other facilities. A nurse who worked with her at one of the facilities noticed that a resident's pain medications weren't lasting an hour, which was unusual. Another licensed practical nurse noted that she had to administer morphine to a patient three times with seemingly no effect, leading the nurse to believe it had been watered down. At the other facility, a nurse observed various instances where the amount of morphine in a bottle was inconsistent with the recorded amount on the narcotic log sheets; the color of the morphine changed to a pale color following defendant's shifts; and a seal on a bottle of morphine was broken with no accompanying entry in the narcotic log sheet showing the morphine had been administered. The other three facilities terminated the defendant for similar issues, including suspected theft of patient medications, tampering, and failed drug tests. In short, defendant's conduct was not a single lapse in judgment, and it did not stop the first or the fifth time she got caught. It spanned multiple facilities, multiple years,

5

and multiple victims, and it ended only with the intervention of law enforcement and the state licensing authority.

B.     The History and Characteristics of the Defendant

The defendant is 31 years old. She has a supportive family, was provided for, alternated between living with each of her divorced parents, and grew up without experiencing abuse or neglect in the home. PSR ¶¶ 37-39. She graduated high school, attended college and later community college, and has an associate's degree in applied science (Nursing), with honors. PSR ¶¶ 60-61. She obtained a professional nursing license, and her employment history following graduation was at six different nursing and medical facilities. PSR ¶¶ 65-72. Her education, training, and experience equipped her to recognize how harmful her conduct was to her patients.

Defendant does report struggles with mental health, but those struggles do not explain or excuse her conduct. Defendant reports first experiencing mental health issues in her teenage years, following a trauma at age 15. PSR ¶¶ 39, 48. In her mid-20s, prior to her commission of the offense, she began receiving mental health treatment, and her medication treatment continued thereafter, including when she was committing the offense. PSR ¶ 49. She also reports two periods of acute distress: in 2019, prior to the commission of the offense, and in 2023, after she entered her guilty plea in this case. PSR ¶ 51. Given this history, ongoing mental health treatment, along with the continued support of her family and partner, will be important aspects of her rehabilitation.

Addiction undoubtedly played a role in the offense, but the defendant denies that she has any ongoing need for treatment. PSR ¶ 57. Notably, defendant's only

significant, reported history related to substance abuse were to pain medications that were accessible to her at her nursing jobs; she reports only one-time use of any other controlled substance. PSR ¶¶ 54-56. If true, this suggests that defendant predominantly—if not exclusively—drew her supply from her patients' medication.

Defendant has no prior criminal history. However, this absence is counterbalanced by her multi-year history of stealing and diluting medications for patients at medical facilities, which repeatedly led to her termination but did not result in criminal charges. PSR ¶¶ 10-11, 65-72. It is unfortunate that each of these facilities—other than the final one—chose to address her issues as personnel matters and did not involve law enforcement sooner. She had been terminated from *five* different medical facilities—including ones with especially vulnerable populations, like hospice and memory-care patients—before committing the offense conduct. These facts cannot be ignored. The Court has sentenced plenty of defendants with addiction issues. But addiction is not adequate to explain the pathology of repeatedly targeting vulnerable patients. To put it simply: she could have obtained drugs from the street or from an unscrupulous doctor. Instead, she repeatedly chose to steal pain medication from patients who needed it, allowing them to suffer.

### C. The Need for Just Punishment, to Promote Respect for the Law, and to Afford Adequate Deterrence

The government submits that a sentence within the Guidelines range is sufficient, but not greater than necessary, to account for the particularly aggravating aspects of defendant's conduct and advance the goals of sentencing, including providing just punishment, adequate deterrence, and promoting respect for the law.

7

The government recognizes that defendant has made progress, including through substance abuse and mental health treatment, and that she has had success on pretrial release. But these efforts cannot undo the harm she caused to the patients under her care, who typically did not have the ability to advocate for themselves.

The government also respectfully submits that defendant presents a risk of recidivism, and that there is a need for specific deterrence. The defendant's suspended Illinois license, and this criminal case, have prevented her from reoffending since she was terminated from the Crystal Lake facility. But absent those external constraints, defendant's history suggests she would continue tampering with patient medications. Her termination from the first facility (in 2019), did not deter her from seeking access to patient medications at another facility; nor did her next termination; nor did the next three terminations.

In addition to specifically deterring the defendant, the sentence also should more generally deter medical professionals from stealing and diluting their patients' medication. Although commonly abused medications typically are subject to various controls designed to deter and detect their abuse at medical facilities, those safeguards are not foolproof. And, as this case illustrates, when facilities identify potential abuse, many will resolve it as a personnel matter without involving law enforcement, leaving a licensed medical professional like the defendant (the demand for whom remains great) free to move on to the next facility, and the next set of victims. Knowing that this form of abuse will be met with substantial prison time may deter others like the defendant.

### D. Supervised Release

In addition to the term of imprisonment, the government recommends a three-year period of supervised release. A period of supervised release will be an important component of the defendant's sentence, to ensure that defendant reintegrates as a law-abiding member of her community following prison. The purposes of a term of supervised release include "rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism." *United States v. Kappes*, 782 F.3d 828, 836 (7th Cir. 2015). In addition to advancing these goals, the conditions should be specific and appropriately tailored to the defendant. *Id.* at 839; *United States v. Strobel*, 987 F.3d 743, 748 (7th Cir. 2021). For the reasons below, the conditions recommended by the Probation Office meet these goals for this defendant.

The government agrees with the four mandatory conditions of supervised release set forth by the Probation Office. PSR ¶ 86. The government also agrees with the discretionary and special conditions they recommend, which are (1) necessary to facilitate supervision by the Probation Office; (2) necessary to ensure she meets the financial obligations imposed in the judgment, including providing restitution to victims; (3) necessary to promote her respect for the law, deter her from committing future crimes, and to protect the public from further crimes by her (particularly in nursing and medical settings); (4) necessary in light of her history of substance abuse; (5) necessary to ensure that she receives substance abuse and mental health treatment in the most effective manner; and (6) otherwise necessary to facilitate her reintegration as a law-abiding member of society.

### E. Restitution

Pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to the victim of the offense, and the defendant has agreed to provide additional restitution to victims of relevant conduct. Pursuant to 18 U.S.C. § 3663(b)(4), restitution includes any expenses victims incur to attend proceedings in this case. The government will provide an estimate of the amount of restitution to be ordered once those expenses are known.

## IV. CONCLUSION

For the reasons stated here, the government respectfully requests that this Court impose a sentence within the Guidelines imprisonment range, a period of three years' supervised release, and restitution to the victims.

    Respectfully submitted,

    MORRIS PASQUAL
    ACTING UNITED STATES ATTORNEY

By:   /s/ *L. Heidi Manschreck*
    L. HEIDI MANSCHRECK
    Assistant United States Attorney
    United States Attorney's Office
    219 South Dearborn, 5th Floor
    Chicago, Illinois 60604
    (312) 469-6205
    heidi.manschreck2@usdoj.gov

Dated: March 20, 2024